IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JIMMY DALE HARDCASTLE                                              PLAINTIFF

V.                                  NO. 15-5168

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jimmy Dale Hardcastle, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.  Procedural Background:**

Plaintiff protectively filed his application for DIB on May 30, 2013, alleging an inability to work since October 1, 2012,[1] due to light headedness from heart palpitations and left shoulder pain. (Tr. 121-127, 164, 176). An administrative hearing was held on August 21, 2014, at which Plaintiff appeared with counsel and testified. (Tr. 21-48).

By written decision dated November 7, 2014, the ALJ found that during the relevant time period (January 1, 2013 through November 7, 2014), Plaintiff had an impairment or combination of impairments that were severe – cardiac arrhythmia and status post ablation. (Tr. 12). However, after reviewing all of the evidence presented, the ALJ determined that

---
[1] Plaintiff amended his onset date to January 1, 2013, at the hearing. (Tr. 27).

Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §404.1567(b) with the following additional limitation: must avoid working around unprotected heights and climbing ladders. (Tr. 13). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but there were other jobs he would be able to perform, such as meter reader, utilities, gate guard, and cashier. (Tr. 14-15).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on May 19, 2015. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9-11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply

because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520  Only if the final stage is reached does the fact finder consider the

Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. § 404.1520, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

## III.   Discussion:

Plaintiff raises the following issues in this matter: 1) The ALJ erred in failing to consider all of Plaintiff's impairments in combination; 2) The ALJ erred in his credibility analysis; 3) The ALJ erred in his RFC determination; and 4) The ALJ erred in failing to fully and fairly develop the medical record. (Doc. 9).

### A.  Impairments in Combination:

Plaintiff argues that the ALJ failed to consider his allegations of chest pain, left shoulder pain, dizziness, lightheadedness, fatigue, difficulty concentrating, difficulty sleeping, hypertension, stage II diastolic heart failure, unstable angina, benign prostatic hypertrophy, hyperlipidemia, hypertriglyceridemia, memory impairment, weakness, dyspnea, syncope, and obesity.

In his decision, the ALJ set forth the fact that at step two, he must determine whether Plaintiff had "a medically determinable impairment that is 'severe' or a combination of impairments that is 'severe.'"  (Tr. 11).  He also stated that an impairment or combination of impairments is "not severe" when medical and other evidence established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  (Tr. 11).  The ALJ stated that at step three, he must determine whether the Plaintiff's "impairment or combination of impairments" meets or medically equals the criteria of an impairment listed in the relevant listings.  (Tr. 11).  The ALJ concluded that Plaintiff did not have an impairment "or combination of

4

impairments" that met or medically equaled the severity of one of the listed impairments. (Tr. 12). This language demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. See Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Raney v. Barnhart, 396 F.3d 1007, 1011 (8th Cir. 2005).

In addition, when the ALJ asked Plaintiff what prevented him from working, he reported symptoms of heart palpitations, dizziness, and faint feeling. (Tr. 35-36). In his application papers, Plaintiff indicated that lightheadedness and left shoulder pain limited his ability to work. (Tr. 176). Finally, Plaintiff was never diagnosed with obesity.

Based upon the foregoing, the Court finds there is substantial evidence to support the fact that the ALJ considered all of Plaintiff's alleged impairments in combination.

### B. Credibility Analysis:

Plaintiff argues that the ALJ disregarded his subjective complaints of pain and gave no valid explanation for why he found Plaintiff's testimony not to be credible. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

5

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 14). The ALJ found that the medical findings were not consistent with the disabling level of limitation alleged by Plaintiff. The ALJ discussed the fact that Plaintiff's daily activities included caring for a dog, doing personal care, preparing breakfast, doing laundry and cleaning, driving a car, shopping in stores, handling money, reading, going to church, and talking to others on the phone. (Tr. 14). He also noted that Plaintiff declined antiarrhythmic medication offered by Dr. Boris Bogomilov, of Hidden Springs Clinic, as he preferred to wait for a curative procedure. (Tr. 14). The ALJ also discussed the fact that Plaintiff testified that his palpitations had improved since the ablation procedure.

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C. RFC Determination:

Plaintiff argues that the medical evidence of record does not support a conclusion that he would be capable of performing even a limited range of light work.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

6

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

In his decision, the ALJ found Plaintiff was capable of performing light work with the additional limitations of avoiding working around unprotected heights and climbing ladders. (Tr. 13). The ALJ discussed the objective medical records, noting that they reflected a history of electrical shock injury with frequent PVCs. (Tr. 13). On May 24, 2013, Plaintiff saw Dr. Botomilov, to whom Plaintiff was referred for palpitations. (Tr. 274). At that time, Plaintiff denied syncope, presyncope, and chest pain, but admitted frequent palpitations., and was noted to have a lot of PVCs of monomorphic origin. (Tr. 274). Dr. Botomilov noted that Plaintiff should benefit from antiarrhythmic initiation. (Tr. 277). A year later, on May 30, 2014, when Plaintiff next saw Dr. Botomilov for follow-up, Plaintiff indicated he was not eager to try antiarrhythmic medication and was looking for a procedure to potentially be curative. (Tr. 281). Dr. Bogomilov referred Plaintiff to Dr. Soliman. (Tr. 285). A June 27, 2014 chest x-ray revealed no acute airspace disease or cardiomegaly. (Tr. 306).

Plaintiff presented himself to the emergency room on June 28, 2014, complaining of palpitations, dizziness, and chest pressure. (Tr. 297). It was then reported that Plaintiff

7

underwent a catheter in February of 2012, which showed no evidence of CAD, and underwent an event monitor which revealed bigeminy and trigemini, which correlated with his symptoms. (Tr. 299). Plaintiff was then willing to try beta blockers. (Tr. 300). By the time of his discharge, Plaintiff's PVCs resolved on a higher dose beta blocker, and Plaintiff was reported as "feeling better than he has in many years." (Tr. 343).

On July 15, 2014, a cardiac ultrasound was performed, which revealed:

1. No gross EKG or echocardiographic evidence of ischemia after adequate exercise
2. Good exercise capacity
3. No chest pain during exercise
4. Frequent PVCs seen during exercise.

(Tr. 336).

On August 6, 2014, Plaintiff was admitted to Washington Regional Medical Center, and underwent a successful radiofrequency ablation of PVC by Dr. Soliman. (Tr. 335). An August 8, 2014 Addendum revealed that Plaintiff was feeling well and had no complaints. (Tr. 329).

The record contains a Physical RFC Assessment, completed by non-examining consultant, Dr. Alice M. Davidson, on August 9, 2013, wherein she concluded that Plaintiff could perform light work, but should avoid concentrated exposure to hazards (machinery, heights, etc.) (Tr. 54-56). The record also contains a report by non-examining consultant, Dr. Clarence Ballard, dated November 15, 2013, wherein he concluded that the medical records supported a light RFC with hazard restrictions. (Tr. 64).

In his decision, the ALJ addressed the above medical findings, the fact that Plaintiff testified that his palpitations had been better since the ablation, but were still present, and the

8

ALJ gave great weight to the opinions of the State medical agency consultants, because they were consistent with the record as a whole. The ALJ also noted that it did not appear that any physician had placed limitations upon Plaintiff. (Tr. 14).

After reviewing the record as a whole, based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's RFC determination.

### D. Failure to Fully and Fairly Develop the Record:

Plaintiff argues that the ALJ neglected to properly explore the totality of his physical problems, particularly with regard to his obesity. "Plaintiff bears a heavy burden in showing the record has been inadequately developed." Chapman v. Colvin, No. 4:15-CV-00522-JLH-JJV, 2016 WL 2585652 at *4 (E.D. Ark. Apr. 11, 2016). The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th

9

Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

The Court first notes that Plaintiff did not list obesity as an impairment in his application papers, which is significant. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001). Further, the state agency physicians' opinions support the ALJ's RFC assessment. The regulations do not require an ALJ to order a consultative exam for every alleged impairment, but give the ALJ the authority to do so if "the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). The Court finds that the existing medical sources contain sufficient evidence for the ALJ to make a determination, and that he did not fail to fully and fairly develop the record.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 13th day of July, 2016.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE